IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN MARTIN KEARNEY, an
Oregon resident; et al.,

     Plaintiffs,

  v.

EQUILON ENTERPRISES, LLC, a
Delaware corporation d/b/a SHELL
OIL PRODUCTS US,

     Defendants.

No. 3:14-cv-00254-HZ

OPINION & ORDER

1 - OPINION & ORDER

Rick Klingbeil
RICK KLINGBEIL, PC
2300 SW First Ave., #101
Portland, OR 97201

Robert A. Curtis
FOLEY BEZEK BEHLE & CURTIS, LLP
15 West Carrillo Street
Santa Barbara, CA 93101

Brady H. Mertz
BRADY MERTZ, PC
345 Lincoln St. SE
Salem, OR 97302

Brooks F. Cooper
DRANEAS & HUGLIN, P.C.
4949 Meadows Road Ste. 400
Lake Oswego, OR 97035

      Attorneys for Plaintiffs


Abby L. Risner
Daniel R. Garner
David M. Harris
GREENSFELDER, HEMKER & GALE, PC
10 S. Broadway Ste. 2000
St. Louis, MO 63102
314-345-4785

Brad S. Daniels
STOEL RIVES, LLP
900 SW 5th Avenue Ste. 2600
Portland, OR 97204


      Attorneys for Defendants
//
//
//
//
//
//


2 - OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiffs bring a proposed class action with a nationwide breach of contract claim, and substantially similar state subclass claims based on state unlawful trade practice statutes. Defendant moves to dismiss for failure to state a claim. I deny Defendant's motion regarding Plaintiffs' nationwide breach of contract claim. I grant Defendant's motion against Plaintiffs' state law claims for failing to plead with specificity as required by Federal Rule of Civil Procedure 9(b). I deny Defendant's motion to dismiss Plaintiffs' state law claims for failing to plead reliance.

## BACKGROUND

At the heart of Plaintiffs' claims is an advertisement allegedly displayed by Defendant at Shell-brand service stations. Am. Compl. ¶ 18. Plaintiffs allege the advertisement looked like this:



Id. at ¶ 19. This advertisement was part of Defendant's "Ski Free" promotion. Id. at ¶ 18. Under this promotion, after individuals purchased ten gallons of fuel and requested a voucher for a free lift ticket, they received a voucher with their purchase receipt. Id. at ¶ 20. This voucher could not be exchanged directly for a free lift ticket, but rather was a "two for one" coupon that allowed the individual to obtain a free lift ticket only after purchasing a lift ticket at full price at a

participating ski resort.  Id.  Moreover, the voucher contained various other restrictions.  Id. at ¶¶ 21–23.

Plaintiffs assert that Defendant's advertisement created a contract, the terms of which entitled Plaintiffs to a free ski resort lift ticket in exchange for buying ten gallons of gas at a participating Shell station.  Plaintiffs argue Defendant breached the terms of the contract, and also violated state unlawful trade practices, when Defendant failed to provide a voucher that could be directly exchanged for a free lift ticket at a participating resort, but instead provided a "two for one" voucher that required the purchase of a second lift ticket in order to receive a "free" lift ticket.  Id. at ¶¶ 62, 65, 70–2, 77, 82, 88, 92, 95–8, 101.

## STANDARDS

A motion to dismiss for failure to state a claim  under Federal Rule of Civil Procedure 12(b)(6) may be granted only when there is no cognizable legal theory to support the claim, or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief.  Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).  In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012).  However, the court need not accept conclusory allegations as truthful.  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

A Rule 12(b)(6) motion to dismiss will be granted if the plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Additionally, "factual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" Id. (citations and footnote omitted).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Additionally, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  The complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

To state otherwise, "[f]irst, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

## DISCUSSION

Plaintiffs bring the following claims: (1) a nationwide claim for relief for breach of contract; (2) three Oregon subclass claims for relief for unlawful trade practices (Or. Rev. Stat. § (O.R.S.) 646.644, O.R.S. 646.608, Or. Admin. R. (O.A.R.) 137-020-0014[1]); (3) a Colorado subclass claim for relief for violating the Colorado Consumer Protection Act (Colo. Rev. Stat. §

---

[1] Plaintiffs' third claim for relief alleges a violation of O.A.R. 137-020-0020.  However, this administrative rule was promulgated under O.R.S. 646.608(1)(u), and this third claim should be pled instead as an additional, separate, violation of 646.608. See also O.R.S. 646.608(4) stating that: "[a]n action or suit may not be brought under subsection (1)(u) of this section unless the Attorney General has first established a rule in accordance with the provisions of O.R.S. chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce."

6-1-105(e), (jj)); (4) a Michigan subclass claim for relief for violating the Michigan Consumer

Protection Act (Mich. Comp. Laws Ann. § 445.903(c), (n), (r), (s), (w), (bb), and (cc)); (5) two

California subclass claims, one for violating the Consumer Legal Remedies Act (Cal. Civ. Code

§ 1770(a)(5), (7), (14), and (17); and the other for violations of state unfair competition and false

advertising statutes (Cal. Bus. & Prof. Code §§ 17200, 17500, 17508, 17509); and (6) a

Washington subclass claim for unfair business practices (Wash. Rev. Code Ann. § 19.86.010).

Am. Compl. ¶¶ 58–106.

     Defendant moves to dismiss the national breach of contract claim for failure to state a

claim.  Defendant also moves to dismiss Plaintiffs' various state law statutory claims as

insufficiently pled pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  Finally,

Defendant moves to dismiss Plaintiffs' state law statutory claims for failure to state a claim.

## I.    Breach of Contract

     Defendant contends that any offer proposed by the "Ski Free" advertisement lacks

specificity, and since "[a] contract requires a clear and unequivocal acceptance of a certain and

definite offer" the advertisement cannot constitute an offer.  Estey & Assoc., Inc. v. McCulloch

Corp., 663 F. Supp. 167, 173 (D. Or. 1986).[2]  Defendant argues that without necessary details—

and the specificity these details would convey—there can be no offer, no acceptance, and no

meeting of the minds, all of which are necessary for a contract to exist.

     Overall, "[t]he general rule is that an advertisement does not constitute an offer."

Leonard v. Pepsico, Inc., 88 F. Supp. 2d 116, 122 (S.D.N.Y. 1999), aff'd, 210 F.3d 88 (2d Cir.

2000); see also Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 785 (9th Cir. 2012).  This

is because "advertisements are understood to be mere requests to consider and examine and

---

[2] Neither Defendant nor Plaintiffs addressed the issue of which jurisdiction's law would apply to the nationwide
claim for breach of contract.  This issue will not be addressed here except to note that this Court found no
meaningful distinctions within the different states' laws which would change this Court's analysis of the issue.

negotiate; and no one can reasonably regard them as otherwise unless the circumstances are exceptional and the words used are very plain and clear." Leonard, 88 F. Supp. 2d at 123. Additionally, advertisements do not generally constitute offers due to the incompleteness of terms. Restatement (Second) of Contracts § 33 cmt. c.

However, there are exceptions to this general rule. For instance, if an advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation," then the advertisement "constitutes an offer, acceptance of which will complete the contract." Lefkowitz v. Great Minneapolis Surplus Store, 86 N.W.2d 689, 691 (1957). Additionally, there is another exception to the general rule for "an offer of a reward." Arthur Linton Corbin et al., Corbin on Contracts § 2.4 (2012).

**A. Sateriale v. R.J. Reynolds Tobacco Co.**

The Ninth Circuit recently addressed when an advertisement may constitute an offer in Sateriale, 697 F.3d 777. Sateriale concerned a customer rewards program operated by R.J. Reynolds Tobacco Company that encouraged the purchase of Camel cigarettes by providing "C-Notes" along with the cigarettes. Id. at 782. These "C-Notes" could later be redeemed for merchandise after participants enrolled in the customer rewards program and redeemed their certificates for goods featured in a catalog. Id. at 783. After customers had been amassing "C-Notes" for years, R.J. Reynolds announced that it was ending the customer rewards program, and that participants had approximately six months to redeem their "C-Notes" before the program's termination. Id. However, when the plaintiffs attempted to redeem their "C-Notes" before the termination of the rewards program, R.J. Reynolds did not allow them to do so. Id. at 784. In response, the plaintiffs filed a lawsuit alleging breach of contract, promissory estoppel, and

violations of two California consumer protection laws. Id. The district court granted defendant's motion to dismiss.

On appeal, the Sateriale court found that "[t]he determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances." Sateriale, 697 F.3d at 784 (internal quotation marks omitted). Furthermore, the court explained that "the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer." Id.

Based on this framework, the Ninth Circuit determined that while the plaintiffs had not adequately alleged the existence of an offer to enter into a *bilateral* contract, they had adequately alleged the existence of an offer to enter into a *unilateral* contract. Id. at 785. The court noted that "[a] bilateral contract consists of mutual promises made in exchange for each other by each of the two contracting parties," while "a unilateral contract involves the exchange of a promise for a performance." Id. (internal citation omitted). The court found that the plaintiffs accepted R.J. Reynolds's unilateral offer because they had saved their "C-Notes" and attempted to redeem them in accordance with the "C-Notes" catalogue's terms. Id. at 784–87.

The court was careful to note that it reached this conclusion, "in light of the totality of the circumstances surrounding [the defendant's] communication to consumers." Id. at 787–88. The court noted "the repeated use of the word 'offer' in the C-Notes; the absence of any language disclaiming the intent to be bound; the inclusion of specific restrictions in the C-Notes; the formal enrolment process . . . ; and the substantial reliance expected from consumers." Id. at 788. Further, the court emphasized that "[t]he plaintiffs' substantial reliance distinguishes this case from cases involving garden-variety advertisements . . . as a member of the public is

unlikely to undertake substantial reliance in the absence of a binding commitment from the offeror—i.e., on the mere chance that the offeror will perform." Id. at 788 n.3.

**B.  Whether the "Ski Free" Advertisement is an Offer in a Unilateral Contract Capable of Acceptance Through Performance**

Again, the common law's general rule is that "[a]dvertisements of goods by display, sign, handbill, newspaper, radio or television are not ordinarily intended or understood as offers to sell." Sateriale, 697 F.3d at 785.  However, there is "an exception for offers of a reward, including offers of a reward for the redemption of coupons." Id. at 786.  This is because the common law rule "arose to address a specific problem—the potential for over-acceptance." Id. at 787.  The ultimate question is—based on "the totality of the circumstances" surrounding the advertisement—"whether the advertiser, in clear and positive terms, promised to render performance in exchange for something requested by the advertiser, and whether the recipient of the advertisement reasonably might have concluded that by acting in accordance with the request a contract would be formed." Id. at 787–88.

Plaintiffs' Amended Complaint does not specifically assert that a unilateral, rather than bilateral, contract was established.  However, in Sateriale, the court noted that failing to reasonably hold advertisers to what appeared to be a clearly understood offer is "inconsistent with the reasonable expectations of consumers and [can] lead to haphazard results." Sateriale, 697 F.3d at 786 (citations omitted).  Accordingly, the Ninth Circuit found that there was, "no question … that plaintiffs—in their complaint, as well as in the district court and on appeal— have consistently alleged acceptance by performance, which is the essence of a unilateral contract." Id. at 788 n. 4.  In this case, Plaintiffs similarly allege that they "accepted Defendant's offer when they purchased ten or more gallons of fuel, and requested a Voucher for a free lift ticket." Am. Compl. ¶ 62.

Construing the alleged facts in the light most favorable to Plaintiffs, the *only* advertisement the consumer saw was the sign stating, "buy 10 gallons of fuel, get a voucher for a free lift ticket!." Am. Compl. ¶ 19. Based on this allegation, Defendant, in clear and positive terms, promised to render performance in exchange for the purchase of ten gallons of fuel. Namely, if one purchases ten gallons of fuel at a Shell Station participating in the "Ski Free" promotion, then the purchaser is rewarded with a voucher for a free lift ticket. Additionally, Plaintiff, as the recipient of the advertisement, "reasonably might have concluded that by acting in accordance with the request a contract would be formed." <u>Sateriale</u>, 697 F.3d at 787. The clear offer in the advertisement established a unilateral contract, and Plaintiffs accepted the offer through performance by purchasing ten gallons of fuel at a Shell station participating in the "Ski Free" promotion.

I emphasize the fact that my ruling is based on the allegations contained in the Amended Complaint. "Whether the plaintiffs' allegations are true has not been decided," but to deny Plaintiffs' claim at this stage of the pleadings would be premature. <u>Id.</u> at 783. Such a fact-based determination is more appropriately made at the summary judgment stage.[3] Therefore, Defendant's motion to dismiss for failure to state a claim with regard to the national class breach of contract claim, based on the premise that the advertisement cannot constitute an offer, is denied.

### C.  Whether the Contract Fails for Lack of Consideration

Defendant also contends that Plaintiffs fail to allege any consideration given in exchange for Defendant's alleged promise to provide a free lift ticket. Defendant argues that Plaintiffs'

---

[3]  This Court notes that Plaintiffs' Amended Complaint itself is unclear whether the advertisement displayed above is the only one displayed by Defendant and acted upon by Plaintiffs. However, construing the allegations in the light most favorable to Plaintiffs, my ruling addresses only the advertisement depicted above and alleged in the Amended Complaint at ¶ 19. Defendant's motion to dismiss suggests other advertisements may have also been displayed. Because this is a motion to dismiss for failure to state a claim, I do not consider Defendant's evidence.

allegations actually involve two separate transactions. The first transaction is Plaintiffs'
purchase of fuel from the gas station in exchange for the price of fuel times the number of
gallons purchased. The second transaction, occurring after the first transaction has been fully
concluded, is the alleged contract whereby Plaintiffs purchased ten or more gallons of fuel in
return for a voucher that could be exchanged for a free lift ticket at a participating ski resort.

Relying on the common law rule that "past consideration cannot support a contract,"
Defendant argues that the second transaction cannot constitute a contract because it was not
supported by new independent consideration, as the consideration is the very same—the price of
the fuel per gallon times the amount of gasoline purchased. See Passante v. McWilliam, 53 Cal.
App. 4th 1240, 1247 (Cal. Ct. App. 1997) (finding past consideration could not support a
contract where plaintiff did not independently bargain for a promise of company stock).
Additionally, Defendant argues the second transaction lacks consideration as the price of the
transaction overall did not vary if a voucher was or was not received by the customer.

However, Defendant's theory rests on the assumption that the contract at issue in this
case is a bilateral contract. I have already determined that Plaintiffs have adequately alleged the
existence of a unilateral contract. Case law and scholarly legal texts indicate that "a conditional
unilateral contract may be created by tender or part performance of the act requested as the
acceptance/consideration, subject to the condition precedent of its completion within the proper
time." 1, Richard A. Lord, Williston on Contracts § 1:17 (4th ed. 2012). Additionally,
"[s]ufficient consideration for a unilateral contract may be provided by a benefit received by the
promisor at the request of the promisor." Matheny v. Unumprovident Corp., 594 F. Supp. 2d
1212, 1223–24 (E.D. Wash. 2009) (citing Browning v. Johnson, 422 P.2d 314, 316 (1967)).

11 - OPINION & ORDER

Accordingly, I find that Plaintiffs sufficiently alleged consideration when they stated that they purchased ten gallons of fuel at a participating Shell station with the intention of participating in the "Ski Free" promotion.  Am. Compl. ¶¶ 27, 29, 31, 33, 35.  Defendant, as promisor, requested that individuals buy ten or more gallons of gas in exchange for the price of fuel.  In addition, Defendant promised individuals a voucher for a "free" lift ticket in return for their performance.  This promise induced customers to shop at Defendant's stores, and Defendant derived a benefit from the offer.

Plaintiffs' performance in this case is adequate consideration.  Therefore, Defendant's motion to dismiss the national breach of contract claim for failure to state a claim based on the argument that Plaintiffs failed to allege proper consideration is denied.

## II.     Whether Plaintiffs' State Law Statutory Claims Must be Pled with Particularity under Federal Rules of Civil Procedure 9(b)

Defendant argues that Plaintiffs' state law statutory claims are fraud-like claims, and must be dismissed because they fail to meet the higher pleading standards of Rule 9(b).  Specifically, Defendant contends that Plaintiffs' state consumer protection claims are not pled with particularity as they do not state "'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003) (internal quotation marks and citation omitted).  Without such specific allegations, Defendant argues that it cannot defend against Plaintiffs' claims other than to simply deny that it did anything wrong.  Furthermore, Defendant alleges specificity is necessary as, without it, Defendant cannot address the timeframe of the alleged conduct, and thus cannot determine whether Plaintiffs' claim is viable.

//

12 - OPINION & ORDER

### A.  Whether Federal Rules of Civil Procedure 9(b) Applies to Plaintiffs' State Law Claims

The Ninth Circuit addressed Rule 9(b) applicability to state law consumer protection statutes in Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  In Kearns, the plaintiff sought to hold Ford accountable for allegedly false and misleading advertising concerning its "certified pre-owned" vehicle program.  Regarding whether the plaintiff's California Consumers Legal Remedies Act and Unfair Competition Law claims had to be pled with particularity, the Ninth Circuit noted that "[a] plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim." Id. at 1125.  If that is the case, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." Id. Regarding what may constitute a claim "sounding in fraud" the Ninth Circuit noted that "'fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used).'" Id. at 1124 (quoting Vess, 317 F.3d at 1097). Additionally, the court stated that to determine whether fraud has been pled to state a course of action, the court must look to state law.  Id. at 1126.  The court found that the plaintiff's claim was grounded in fraud as he alleged a unified course of conduct based on misrepresentation.  Id. As such, the court held that the plaintiff's claim as a whole must satisfy the particularity requirements of Rule 9(b).  Id. at 1127.

The Ninth Circuit has also focused on the purpose behind Rule 9(b) when ascertaining whether claims must be pled with specificity.  In Vess, the Ninth Circuit noted that Rule 9(b) is intended to protect reputational harm.  Id. at 1104.  In Kearns, the Ninth Circuit found that Rule 9(b) serves three primary purposes:

> (1) to provide defendants with adequate notice to allow them to defend the charge
> and deter plaintiffs from the filing of complaints as a pretext for the discovery of
> unknown wrongs; (2) to protect those whose reputation would be harmed as a
> result of being subject to fraud charges; and (3) to prohibit plaintiffs from
> unilaterally imposing upon the court, the parties and society enormous social and
> economic costs absent some factual basis.

Kearns, 567 F.3d at 1125.

Therefore, to determine whether Rule 9(b) applies, the court must determine whether "the claim is said to be 'grounded in fraud' or to 'sound in fraud.'" Id. If so, the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." Id. This Court may also consider the underlying purpose of Rule 9(b).

Plaintiffs' state subclass claims all rely on different underlying state consumer protection statutes. However, the differences among these statutes do not alter this Court's analysis. Therefore, the state statutory claims are discussed together. Plaintiffs do not allege any particular facts or actions on the part of the Defendant within the state subclasses' claims for relief. Rather, Plaintiffs incorporate by reference ¶¶ 1-62 of the Amended Complaint. The relevant allegations as to whether Plaintiffs' state subclass claims claim "sound[] in fraud" are: (1) that a franchised Shell station cannot implement or maintain the "Ski Free" promotion absent approval by Defendant, Am. Compl. ¶ 17; (2) that Defendant at various times during the class period conducted a "Ski Free" promotion, id. at ¶ 18; (3) that Defendant claimed and advertised that the purchaser of ten gallons of Shell-branded fuel would receive a voucher that entitled him or her to a "free" ski resort lift ticket, id.; (4) that the Voucher provided after an individual purchased ten or more gallons of fuel was not a coupon or voucher enabling the holder to obtain a "free lift ticket," but was instead a "two for one" coupon or voucher that allowed the holder to obtain a lift ticket only by purchasing a second lift ticket at full price at a participating ski resort, id. at ¶ 20; (5) that the Voucher contained material conditions and limitations, id. at ¶¶ 21–25; (6)

that these restrictive terms and conditions were not present when the subclass representative

accepted the offer, id. at ¶¶ 27, 29, 31,33, 35; and (7) that at the time and place the subclass

representative purchased the fuel and received the Voucher, there was no clear and conspicuous

indication of the many material limitations of the offer. Id. at ¶¶ 28, 30, 32, 34, 36.

When looking at whether fraudulent acts have been pled to state a "course of conduct,"

the elements of fraud in each subclasses' state are similar.[4] Kearns, 567 F.3d at 1125–26.

Therefore, I analyze them together when considering whether the claims sound in fraud. For the

sake of this Court's analysis, I will use the elements of fraud in Oregon as an exemplar of the

other states. The elements of fraud in Oregon are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
> of its falsity or ignorance of its truth; (5) his intent that it should be acted on by
> the person and in the manner reasonably contemplated; (6) the hearer's ignorance
> of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his
> consequent and proximate injury.

Rice v. McAlister, 519 P.2d 1263, 1265 (1974).

Here, Plaintiffs allege that (1) a representation (the advertisement), (2) was false (the

advertisement stated Plaintiffs would receive a free lift ticket, and they did not), (3) the

misrepresentation was material (Plaintiffs did not receive the very thing they allegedly entered

into the transaction for), (4) the subclass representatives did not know of the restrictive

conditions at the time of performance, (5) they relied on this representation and had a right to do

so, and (6) they suffered an injury as a result. Although Plaintiffs do not allege that Defendant

had knowledge of the advertisement's falsity or ignorance of its truth directly, Plaintiffs do

allege that Defendant conducted the advertisement program and approved all the marketing

---

[4] See, e.g.: Rice v. McAlister, 519 P.2d 1263, 1265 (1974) (listing the elements of fraud in Oregon); Bristol Bay
Prods., LLC v. Lampack, 312 P.2d 1155, 1160 (2013) (listing the elements of fraud in Colorado); Titan Ins. Co. v.
Hyten, 817 N.W.2d 562, 567–68 (2012) (listing the elements of fraud in Michigan); Conroy v. Regents of Univ. of
Cal., 203 P.3d 1127, 1135 (2009) (listing the elements of fraud in California); Elcon Const., Inc. v. E. Washington
Univ., 273 P.3d 965, 970 (2012) (listing the elements of fraud in Washington).

activities and plans.  Am. Compl. ¶ 17–18.  Similarly, while Plaintiffs do not specifically allege

that Defendant intended that the advertisement be relied upon, intention may be implied as a

primary purpose of advertising is to induce reliance.  See, e.g., True v. Am. Honda Motor Co.,

520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007) (finding that a plaintiff is entitled to a presumption

of reliance under California law if the alleged false advertising is material to the claim).

Based on Plaintiffs' allegations and the elements of fraud in the underlying jurisdictions,

I conclude that Plaintiffs' Subclasses' claims for relief "sound[] in fraud," and must be pled with

particularity under Rule 9(b).  Again, the relevant inquiry is not whether the state consumer

protection statutes specifically mention fraud or require an individual to plead the elements of

fraud.  If that were the case, this would be a simpler matter.  Rather, the relevant inquiry is

whether Plaintiffs have alleged a unified course of fraudulent conduct and rely entirely on that

course of conduct as the basis for their claim.  Kearns, 567 F.3d at 1125.  Plaintiffs have done so

here.  This being the case, "the pleading … as a whole must satisfy the particularity requirement

of Rule 9(b)."  Id.

**B.  Whether Plaintiffs' State Law Claims were Plead with Sufficient Particularity**

Because Rule 9(b) applies to Plaintiffs' state law claims, I next consider whether these

claims were plead with sufficient particularity.  As noted by the Ninth Circuit, "Rule 9(b) clearly

imposes an *additional* obligation on plaintiffs: the statement of the claim must *also* aver with

particularity the circumstances constituting the fraud.  In re GlenFed, Inc. Sec. Litig., 42 F.3d

1541, 1548 (9th Cir. 1994), superseded by statute on other grounds as stated in SEC v. Todd, 642

F.3d 1207, 1216 (9th Cir. 2011).  "Rule 9(b) would clearly be superfluous if its only function

were to ensure that defendants are provided with that degree of notice which is already required

by Rule 8(a)."  Id.  The allegations must be "specific enough to give defendants notice of the

particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985). Additionally, "allegations grounded in fraud must be accompanied by the "who, what, when, where, and how" of the misconduct charged. <u>Vess</u>, 317 F.3d at 1106. Similar to the analysis above, I analyze all of the state claims together as the underlying allegations are essentially the same.

The "who" in this claim is "a Shell station located within the [relevant state]." Am. Compl. ¶¶ 27, 29, 31, 33, 35. The "what," is the "Ski Free" advertisement set forth in ¶ 19. <u>Id.</u> at ¶ 19. The "when" is "within the class period." <u>Id.</u> at ¶¶ 27, 29, 31, 33, 35. The "where" is also "a Shell station located within the [relevant state]." <u>Id.</u> The "how" is that the class representative purchased fuel at the Shell station with the intent of receiving a free lift ticket, but was instead provided a "buy one, get one free offer" with other various restrictions. <u>Id.</u>

The "who" in this case is less than specific. Plaintiffs allege that Defendant franchises a number of Shell-branded service stations within the relevant states and requires periodic submittal, review, and approval of each franchisee's marketing, promotions, and business plan. Am. Compl. ¶ 17. This includes approval and review of the "Ski Free" promotion. <u>Id.</u> However, the number of Shell stations within each relevant state is likely over a hundred. That being the case, even if Defendant does review and approve advertising schemes, it may not know with specificity which of its franchised Shell stations displayed the alleged advertisement. Overall, simply alleging a generic Shell station within the relevant state does not state with particularity who engaged in fraudulent behavior.

The "what" in this case is disputed, and is less than clear even viewing the allegations in the Amended Complaint in the light most favorable to Plaintiffs. In its simplest form, the "what"

is the advertisement that states "Buy 10 gallons of fuel, get a voucher for a free lift ticket." Id. at ¶ 19. If that were the *only* alleged advertisement displayed at participating Shell stations then this likely would be specific enough to put Defendant on notice. However, Plaintiffs also allege that there were "various other signs or indications on or about the store property indicating in large bolded lettering that free products or services were being offered by the station under the Ski Free promotion," and that "signage was consistent with signage contained on the www.skifreedeals.com website for various seasons during the class period." Id. Finally, Plaintiffs state that signage typically had "similar size and substance." Id. While the advertisement may be specific enough to constitute an offer at this stage of the proceedings under the more lenient Rule 8(a) standard, it is debatable whether the "what" in this case is particular enough under the more stringent Rule 9(b) standard. However, taking all facts in the light most favorable to Plaintiffs, and considering only the allegations in the Amended Complaint, Plaintiffs' pleadings are sufficient.

The "when" in this case is also not clearly specified. The class representatives allege that they purchased fuel at a participating Shell Station "within the class period." Am. Compl. ¶¶ 27, 29, 31, 33, 35. However, Plaintiffs never allege the specific dates of the class period. The closest they come to defining the "when" or the "class period" is when they allege that "[d]uring the 2012 ski season over 70,000 Vouchers were redeemed at participating ski resorts within the class states. On information and belief, substantially more than 70,000 Vouchers were obtained by class members *during each year* within the class period." Id. at ¶ 26. Therefore, the class period may be the 2012 ski season. However, the words "during each year" imply that the class period is longer than a single year. Additionally, the term "ski season" itself is less then specific and it is unclear which months of the year this covers. Also, the "ski season" likely varies from

state to state.  For instance, the "ski season" is likely longer in Oregon than in Michigan.

Furthermore, the "when" of the class period is important to state with particularity. For instance,

O.R.S. 646.638(6) states that "[a]ctions brought under this section must be commenced within

one year after the discovery of the unlawful method, act or practice."  If the Oregon class

representative purchased fuel at a participating Shell Station and discovered the unlawful

method, act, or practice over a year before the commencement of this action, his claim would be

barred by the one-year statute of limitations.  As Plaintiffs fail to allege any date with

particularity, Plaintiffs have failed to carry their burden under the "when" prong of the Rule 9(b)

particularity analysis.

The "where" is less than specific for the same reasons as the "who."  Although Plaintiffs

allege that the incidents took place at Shell stations within the relevant states, there are hundreds

of potential locations.  This is not specific or particular, and fails to notify Defendant which of its

franchised locations may have displayed the alleged false advertising.

Plaintiffs allege the "how" with sufficient particularity.  They state that the subclass

representatives purchased ten gallons of fuel with the intention of participating in the "Ski Free"

promotion. Am. Compl. ¶¶ 27, 29, 31, 33, 35. They also allege that the subclass representatives

thought they were receiving a Voucher for a free lift ticket, and instead received a "buy one, get

one free" offer.  Additionally, they allege that there was no clear and conspicuous indication of

the many restrictive terms contained in the Voucher.  Id. at ¶¶ 28, 30, 32, 34, 34, 36.  Although

Plaintiffs do not directly state that the subclass representatives saw and relied upon the alleged

false advertising when they made their purchases, Plaintiffs have pled reliance in a round about

manner.  Construing the pleadings in the light most favorable to Plaintiffs, it is a permissible

inference to say that the subclass representatives saw and relied on the alleged false advertising when they made their purchase.

Even taking that inference into account, Plaintiffs have failed to plead with particularity the who, when, and where of their state statutory claims. Because Plaintiffs have failed to plead their entire claim with particularity, their state law statutory claims are dismissed with leave to amend in accordance with the requirements of Rule 9(b). At this stage of the proceedings, Plaintiffs need not identify every franchised Shell station which may have displayed the alleged false advertising. However, Plaintiffs are required to at least state with specificity the "who, what, when, where, and how" of the misconduct charged in relation to Plaintiffs' named class representatives.

## III. Whether Plaintiffs Adequately Pled Reliance and Causation

Defendant next argues that Plaintiffs' state law statutory subclass claims should be dismissed for failure to state a claim. Defendant contends that Plaintiffs failed to state a claim because Plaintiffs failed to plead reliance on the advertisement for their California, Oregon, and Michigan claims, and failed to plead that the advertisement was the cause of their subsequent injury for their Washington and Colorado claims. Assuming that the elements of reliance and causation are required for these claims, Plaintiffs adequately pled both. Therefore, Defendant's argument fails.

While there are slight differences in the analysis between reliance and causation, these differences do not significantly affect my analysis. Plaintiffs first allege that the subclass representatives purchased ten or more gallons of fuel at a Shell station in the relevant state *with the intention* of participating in the "Ski Free" promotion. Am. Compl. ¶¶ 27, 29, 31, 33, 35 (emphasis added). Additionally, in their state statutory claims, Plaintiffs reallege ¶¶ 1–62. There

Plaintiffs state that "Defendant's promotional Ski Free banner posted at each participating Shell station was an offer."  Id. at ¶ 59.  Then Plaintiffs allege that:

> The terms of Defendant's offer was [sic] that if Plaintiffs or a Class Member purchased ten gallons of fuel at the Shell station *displaying the Ski Free banner*, Defendant or its agent would provide them with a Voucher that could be exchanged for a free lift ticket at a participating ski resort.

Id. at ¶ 60. (emphasis added).  Following this, Plaintiffs state that, "*Plaintiffs and Class Members* accepted Defendant's offer when they purchased ten or more gallons of fuel, and requested a Voucher for a free lift ticket."  Id. at ¶ 61 (emphasis added).

Taking these statements together, and construing them in the light most favorable to Plaintiffs, Plaintiffs have alleged that the subclass representatives went to Shell stations displaying the "Ski Free" banner with the intention of accepting Defendant's alleged offer and participating in the "Ski Free" promotion.  Although Plaintiffs allege reliance and causation in a relatively convoluted way, the allegations—taken together—adequately allow this Court to infer reliance and causation.  See Iqbal, 556 U.S. at 679 (finding that a complaint must contain "well-pleaded facts" which "permit the court to infer more than the mere possibility of misconduct[.]")

## IV.    Whether Plaintiffs Adequately Named Class Representatives

In its motion, Defendant also argues that Plaintiffs' state law claims must be dismissed in which Plaintiffs' subclasses were represented by a Jane Roe and John Doe.  However, Plaintiffs have now enlisted named class representatives for all of their state law claims.  As such, Defendant's argument is now moot.  Plaintiffs will name the current class representatives for all of their state law claims in their Second Amended Complaint.

//

//

//

**CONCLUSION**

Based on the foregoing, I grant in part, and deny in part, Defendant's motion to dismiss

[26] as follows:  I deny the motion to dismiss the nationwide breach of contract claim, and I

grant the motion as to the state law claims.  Plaintiffs' Second Amended Complaint is due within

15 days of the date of this opinion.


IT IS SO ORDERED.


Dated this _____ day of December, 2014.


MARCO A. HERNÁNDEZ
United States District Judge